*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

DONSHEY JONES,

      Defendant-Appellee.

UNPUBLISHED
November 12, 2019

No. 349253
Wayne Circuit Court
LC No. 19-000852-01-AR

Before: M.J. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

The prosecution appeals by leave granted[1] the circuit court's order reversing the district court's finding and order on competency. We reverse and reinstate the finding and order on competency from the district court.

## I. FACTUAL BACKGROUND

Defendant was charged with assault with intent to do great bodily harm, MCL 750.84, and felonious assault, MCL 750.82, for stabbing her stepmother three times and puncturing her lung. On January 15, 2019, Judge Michael Wagner of the 36th District Court held a competency hearing. The parties, as well as the district court, agreed that defendant was incompetent to stand trial at that time. The issue in front of the district court was whether, with treatment, defendant could attain competence in the statutorily allotted time of 15 months.

Dr. Iren Assar, who had been working as a psychologist for the Center for Forensic Psychiatry (CFP) for three years, testified that she interviewed defendant for approximately two hours, and on the basis of that interview and defendant's severe intellectual disability, she did not believe defendant would attain competence even if provided treatment. Dr. Assar also testified

---

[1] See *People v Jones*, unpublished order of the Court of Appeals, entered July 29, 2019 (Docket No. 349253).

that, of the individuals she had previously interviewed, she deemed 22% of them incompetent, and of that 22%, she deemed 54% permanently incompetent. Most of Dr. Assar's determinations were made on her first evaluation.

Despite Dr. Assar's testimony, the district court concluded that there was a substantial probability that defendant would attain competence within 15 months if provided a course of treatment, and ordered defendant to submit to treatment for that purpose. Defendant appealed the district court's order to the circuit court, arguing that the district court abused its discretion because there was no evidence to support its conclusion, and because the determination was founded on a misunderstanding of the applicable law. The circuit court agreed, reversed the district court's order, and ordered that the prosecution initiate civil commitment proceedings in the probate court. This appeal followed. The prosecution argues that the district court did not abuse its discretion in concluding that there was a substantial probability that defendant could attain competence with treatment. We agree.

## II. ANALYSIS

This Court reviews for an abuse of discretion a court's decision on a defendant's competence to stand trial. *People v Harris*, 185 Mich App 100, 102; 460 NW2d 239 (1990). "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *People v Kammeraad*, 307 Mich App 98, 140; 858 NW2d 490 (2014) (citation and quotation marks omitted; alternation in original). This Court reviews a court's factual findings for clear error. *People v Maben*, 313 Mich App 545, 549; 884 NW2d 314 (2015). "A finding is clearly erroneous if this Court is left with the definite and firm conviction that a mistake has been made." *People v Lee*, 314 Mich App 266, 272; 886 NW2d 185 (2016). This Court reviews de novo issues of statutory interpretation. *People v Davis*, 310 Mich App 276, 286; 871 NW2d 392 (2015).

MCL 330.2020 *et seq.*, of the Mental Health Code governs the competence of a criminal defendant to stand trial. *Id*. at 288. "As a general rule, a criminal defendant is 'presumed competent to stand trial.' " *Id*., quoting MCL 330.2020(1). "A criminal defendant 'shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner.' " *Davis*, 310 Mich App at 288, quoting MCL 330.2020(1). "The statute places this determination in the court's hands." *Davis*, 310 Mich App at 288.

"A defendant who is determined incompetent to stand trial shall not be proceeded against while he is incompetent." *Davis*, 310 Mich App at 288, quoting MCL 330.2022(1). "Whether the CFP opines that the defendant is competent or incompetent, the court must conduct a hearing within five days of receiving its report." *Davis*, 310 Mich App at 288, citing MCL 330.2030(1).

> On the basis of the evidence admitted at the hearing, the court shall determine the issue of the incompetence of the defendant to stand trial. If the defendant is determined incompetent to stand trial, the court shall also determine whether there is a substantial probability that the defendant, if provided a course of treatment, will attain competence to stand trial within the time limit established by [MCL 330.2034]. [MCL 330.2030(2).]

If the court determines that the defendant is currently incompetent to stand trial, but there is a substantial probability that, if provided a course of treatment, the defendant will attain competence to stand trial within the time limit established by section MCL 330.2034, "the court shall order the defendant undergo treatment in order to attain competence to stand trial." MCL 330.2032(1). A defendant shall not receive treatment "in excess of 15 months or ⅓ of the maximum sentence the defendant could receive if convicted of the charges against him, whichever is lesser; nor after the charges against the defendant are dismissed." MCL 330.2034(1). The time limit applicable to defendant in this case is 15 months. However, if the court determines that there is not a substantial probability that, even if provided treatment, the defendant will be able attain competence within the established time limit, the court may direct the prosecutor to initiate civil commitment proceedings. *Davis*, 310 Mich App at 289.[2]

We first address the circuit court's holding. The circuit court concluded that the district court was biased toward Dr. Assar and discredited her opinion because she had only three years of experience as a psychologist and rendered 54% of the individuals who were incompetent to be permanently incompetent on the first evaluation. As will be discussed below, this is not what occurred during the competency hearing in the district court, and there is no reason to believe that Judge Wagner was biased toward Dr. Assar. Rather, the circuit court judge imputed onto Judge Wagner the arguments set forth by the prosecutor during the circuit court hearing. Therefore, the circuit court's conclusion was founded on an erroneous understanding of what occurred in the district court.

During the circuit court hearing, the prosecutor asserted that the district court did not abuse its discretion because it was not bound by Dr. Assar's evaluation. The prosecutor further stated that, when the court is relying on a doctor's opinion, credibility is inevitability at issue, and in this case, it was reasonable for Judge Wagner to question Dr. Assar's judgment because she had only been working for the CFP for three years, and it was "startling" that she found 54% of the people who she rendered incompetent to be permanently incompetent on the basis of a two hour interview. In response to this argument, the circuit court judge commented that it was completely unfounded for Judge Wagner to find that three years of experience rendered a person's opinion invalid. The circuit court determined that it was simply bias on the part of Judge Wagner to discredit an opinion on the basis of a person's years of employment. However, Judge Wagner never expressed concern with, nor even commented on, Dr. Assar having only practiced psychology for three years. Rather, the prosecutor made this argument and the circuit court judge imputed it onto Judge Wagner.

The circuit court also considered Judge Wagner to be biased for discrediting Dr. Assar based on the frequency at which she rendered individuals to be incompetent. Again, the

---

[2] MCL 330.2031 provides: "the court may direct a prosecuting attorney to file a petition asserting that the defendant is a person requiring treatment as defined by [MCL 330.1401] or meets the criteria for judicial admission as defined by [MCL 330.1515] with the probate court of the defendant's county of residence."

prosecutor argued before the circuit court that the frequency at which Dr. Assar rendered individuals permanently incompetent was "startling." However, Judge Wagner never gave an opinion about this statistic. Rather, during the competency hearing, Judge Wagner asked Dr. Assar to confirm that she deemed 22% of individuals incompetent and approximately 50% of those individuals permanently incompetent. This was the only time Judge Wagner mentioned this statistic. Nonetheless, the circuit court judge asserted that Judge Wagner could not find this statistic to be startling because there was no statistical basis on which to find it startling. Thus, the circuit court judge again imputed the prosecutor's argument onto Judge Wagner stating, "Well, then this is nothing but pure bias to make a determination of what's startling because there's no sample size. There's no statistical comparison that[,] for the industry[,] this is outside of some standard." The circuit court concluded that Judge Wagner's opinion was made on the basis of his bias. Because the circuit court erroneously imputed the prosecutor's arguments onto Judge Wagner, the circuit court's basis for reversing the district court's order was completely erroneous.

Having concluded that the circuit court's basis for reversing the district court was erroneous, the next question is whether reversal may have been warranted regardless. That is, whether the district court abused its discretion in concluding that there was a substantial probability that defendant could attain competence within 15 months if provided treatment. Defendant has two primary arguments as to why the district court abused its discretion: (1) the district court violated defendant's due-process rights by ordering her to be confined to treatment for 15 months because this order was founded on the district court's misunderstanding of the law, and (2) there was no evidence to support the district court's conclusion that defendant could attain competence with treatment. These arguments are without merit.

Looking to the first argument, the district court comprehended the law and the legal options available. During the competency hearing, defense counsel requested that the charges be dismissed *and* that the district court order defendant to continue her community based treatment with Team Wellness. The district court correctly explained to defense counsel that, at that juncture, only the prosecution had the power to dismiss the charges, and that, if the prosecution so decided, civil commitment proceedings would be initiated and the district court would have no power to decide where defendant would undergo treatment.

MCL 330.2044 governs the dismissal of charges upon a finding that a defendant is incompetent. MCL. 330.2044 provides, in relevant part:

> (1) The charges against a defendant determined incompetent to stand trial shall be dismissed:
>
> (a) When the prosecutor notifies the court of his intention not to prosecute the case; or
>
> (b) Fifteen months after the date on which the defendant was originally determined incompetent to stand trial. [MCL 330.2044(1)(a) and (b).]

Thus, charges may be dismissed if the prosecution chooses not to prosecute or after 15 months from the date the defendant was determined not competent to stand trial. Neither of these

situations applied here. Thus, the district court was correct in stating that it did not have the power to dismiss the charges against defendant. Moreover, pursuant to MCL 330.2031, as stated above, if a district court finds that there is not a substantial probability that a defendant will attain competence within 15 months, the court may direct the prosecutor to initiate civil commitment proceedings. See *Davis*, 310 Mich App at 289. Thus, had the district court found that defendant would not attain competence within 15 months, civil commitment proceedings would have commenced and the district court would not have had control over defendant's treatment.

Defendant also contends that the district court misunderstood that it had the option to order the prosecution to initiate civil commitment proceedings. However, as stated above, the district court explained to defense counsel more than once that, if the charges were dismissed, civil commitment proceedings would be initiated. Thus, the district court understood the legal options available and defendant's contention that the district court abused its discretion by misunderstanding the law is without merit.

As to defendant's second argument, that there was no evidence to support the district court's conclusion that defendant could attain competence with treatment, we again disagree. There was evidence admitted at the competency hearing to allow the district court to make its determination. Dr. Assar testified that defendant completed the eleventh grade and did not receive special education courses other than accommodations for her speech and language impairments. Defendant also appeared to be literate, although she struggled with reading. Dr. Assar spoke to defendant's father, who reported that she could read the Bible. Defendant also maintained employment for at least two years. Although Dr. Assar believed that defendant could not attain competence because of her intellectual disability, she suggested that, if defendant were to receive treatment, she should receive treatment at the Kalamazoo Psychiatric Hospital because the hospital had a specific unit designed to help teach individuals with developmental and intellectual disabilities. On the basis of this information, the district court may have found that, despite defendant's inability to retain basic legal information during the two hour meeting, defendant could attain a level of competence to stand trial with specialized treatment designed to help individuals with developmental and intellectual disabilities. Thus, the district court did not abuse its discretion.

Finally, defendant also argues that the district court never actually made a determination as to whether there was a substantial probability that defendant would attain competence within 15 months if provided treatment. However, at the conclusion of the competency hearing, the district court stated the following:

> [Defendant's] going to be placed in the Department of Community Health with the medical supervision of treatment [sic] where they, the doctors, professionals, can develop a course of treatment and try to have her restored to competency. That is what I would love to see happen. That is what I think would be best for her. . . .
>
> Court has indicated she's found incompetent. There is going to be an effort to restore her competency and sometime prior to the expiration of the statutory authority, there will be another assessment, where she will regain

competency or she will not and at that point, the People would have to dismiss the
case or not.

The district court's determination as to whether there was a substantial probability that defendant
would retain competence is clear from its statement.

Reversed and remanded for reinstatement of the district court's finding and order on
competency.  We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle

-6-