*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LARRYION PERRY GREER, Minor.

PEOPLE OF THE STATE OF MICHIGAN,

        Petitioner-Appellee,

v

LARRYION PERRY GREER,

        Respondent-Appellant.

UNPUBLISHED
May 28, 2020

No. 348660
Wayne Circuit Court
Family Division
LC No. 17-001766-DL

Before: BECKERING, P.J., and FORT HOOD and SHAPIRO, JJ.

PER CURIAM.

Respondent appeals as of right his bench trial adjudication of second-degree criminal sexual conduct (CSC), MCL 750.520c(1)(a) (victim under 13 years of age), and assault with intent to commit second-degree CSC, MCL 750.520g(2), for which the lower court ordered that respondent be placed in intensive in-home probation with his mother. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of the sexual assault of two young girls on July 30, 2017. EG and SG testified that, on that date, they went to a waterpark called Turtle Cove with EG's mother. EG and SG were floating on the lazy river in a double tube when respondent and David Greer approached them. Respondent and Greer asked EG and SG how old they were and whether they had siblings. EG told respondent and Greer that she was 12 years old and both EG and SG said that they had boyfriends in an attempt to make respondent and Greer leave them alone. Respondent and Greer told EG and SG their names. EG testified that respondent and Greer touched and grabbed both her's and SG's buttocks, and SG testified that either respondent or Greer touched her buttocks, thighs, and breasts. Either respondent or Greer also attempted to untie the strings on the girls' bathing suits. EG and SG asked respondent and Greer to stop, but they did not.

EG attempted to exit the lazy river with SG. As they attempted to exit, respondent and Greer grabbed SG's tube and pulled her back into the lazy river. EG stopped trying to exit the lazy river and attempted to catch up with SG. Respondent and Greer then began touching EG's and SG's buttocks again. The incident stopped when a lifeguard entered the lazy river.

## I. COMPETENCY

Respondent first contends that the lower court erred when it denied respondent's request for a competency evaluation. We disagree.

"A claim of incompetency to stand trial, and the right to a competency determination, implicates constitutional due process protections." *In re Carey*, 241 Mich App 222, 225; 615 NW2d 742 (2000). This Court reviews issues of constitutional law de novo. *Id*. at 226. However, the lower court's determination regarding whether a bona fide doubt existed as to competency will only be reversed where the lower court has abused its discretion. *People v Harris*, 185 Mich App 100, 102; 460 NW2d 239 (1990). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Brown*, 326 Mich App 185, 192; 926 NW2d 879 (2018) (quotation marks and citation omitted).

"A juvenile 10 years of age or older is presumed competent to proceed unless the issue of competency is raised by a party." MCL 712A.18n(1).

> (h) "Incompetent to proceed" means that a juvenile, based on age-appropriate norms, lacks a reasonable degree of rational and factual understanding of the proceeding or is unable to do 1 or more of the following:
>
> (*i*) Consult with and assist his or her attorney in preparing his or her defense in a meaningful manner.
>
> (*ii*) Sufficiently understand the charges against him or her. [MCL 712A.1(1)(h).]

"The conviction of an individual when legally incompetent violates due process of law." *In re Carey*, 241 Mich App at 227. "The protection afforded by the Due Process Clause requires that a court sua sponte hold a hearing regarding competency when any evidence raises a bona fide doubt about the competency of the respondent." *Id*. at 227-228. "[T]he test for such a bona fide doubt is whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *People v Kammeraad*, 307 Mich App 98, 138-139; 858 NW2d 490 (2014) (quotation marks and citation omitted).

"There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Id*. at 139 (quotation marks and citation omitted). "Evidence of a respondent's irrational behavior, a respondent's demeanor, and a respondent's prior medical record relative to competence are all relevant in determining whether further inquiry in regard to competency is required." *Id*. Counsel's expressed doubt as to a respondent's competency is also a factor that should be considered. *Drope v Missouri*, 420 US 162, 177 n 13; 95 S Ct 896; 43 L Ed 2d 103 (1975).

In this case, respondent's motion for a competency evaluation stated that respondent did not understand what happened at the adjudicatory hearing and that he "suffers from the mental illness of ADHD," which prevented him from forming the requisite mens rea to commit or understand the gravity of the crime. Counsel did not assert that respondent was unable to consult with his attorney or assist his attorney in preparing his defense in a meaningful manner. Thus, MCL 712A.1(1)(h)(*i*) is irrelevant in this case. Counsel's argument did, however, call into doubt whether respondent could sufficiently understand the charges against him, thereby implicating MCL 712A.1(1)(h)(*ii*).

Respondent relies solely on the expressed doubt of his attorney and the fact that he was a special-needs student as evidence that he was incompetent to stand trial. And of course, while his counsel's doubt is one factor to consider when determining whether a competency evaluation is necessary, it is not the only factor. Apart from his counsel's doubts, respondent has neither presented nor pointed to any evidence that might raise a bona fide doubt as to his competency. Respondent proffered no medical records that might call his competency into question, nor did he exhibit any unusual behavior or otherwise give any indication that he lacked a rational or functional understanding of the proceedings. See *Harris*, 185 Mich App at 102-103; MCL 712A.1(1)(h). Accordingly, on the basis of the record before this Court, we cannot conclude that the trial court abused its discretion by declining to order a competency evaluation.

## II. SUFFICIENCY OF THE EVIDENCE

Respondent next contends that his adjudication was not supported by sufficient evidence because the prosecution failed to prove beyond a reasonable doubt both the elements of the crimes and that respondent was the person who committed the crimes. We disagree.

"We review de novo a challenge to the sufficiency of the evidence." *People v Savage*, 327 Mich App 604, 613; 935 NW2d 69 (2019). "We review the evidence in the light most favorable to the prosecution and determine whether the [factfinder] could have found each element of the charged crime proved beyond a reasonable doubt." *Id*. "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of [a] crime." *Id*. We also must draw all reasonable inferences and make all credibility choices in support of the verdict. *Id*.

Respondent first appears to argue that the testimony of EG and SG was insufficient to establish that the charged offenses occurred. Respondent was charged with second-degree CSC under MCL 750.520c(1)(a) and assault with the intent to commit second-degree CSC under MCL 750.520g(2). In order to be convicted of second-degree CSC under MCL 750.520c(1)(a), an individual must engage in sexual contact with a victim who is under 13 years of age. "Sexual contact" is defined as

> the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:
>
> (i) Revenge.

(ii) To inflict humiliation.

(iii) Out of anger.  [MCL 750.520a(q)].

" 'Intimate parts' includes the primary genital area, groin, inner thigh, buttock, or breast of a human being."  MCL 750.520a(f).

Assault with intent to commit second-degree CSC requires a showing of an assault and the intent to commit second-degree CSC.  MCL 750.520g; MCL 750.520c.  "An assault is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery."  *People v Nickens*, 470 Mich 622, 628; 685 NW2d 657 (2004) (quotation marks and citations omitted).  "[A] battery is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person."  *Id*. (quotation marks and citation omitted).

Respondent argues that the testimony of both EG and SG was confusing and inadequate.  However, EG clearly testified that both respondent and Greer touched her and SG, and SG testified that at least one of the boys touched her.  EG said the touching included her buttocks.  SG said the touching included her buttocks, thighs, and breasts.  Both girls were under 13 years old when the touching occurred, and the contact could reasonably be construed as being for the purpose of sexual arousal or gratification because respondent was heard calling the girls "cute."  Thus, the testimony of EG and SG satisfactorily established that the elements of MCL 750.520c(1)(a) and MCL 750.520g(2) were met, particularly after drawing all reasonable inferences and making all credibility choices in support of the verdict.  See *Savage*, 327 Mich App at 613.

Respondent next argues that the prosecution failed to establish beyond a reasonable doubt that it was respondent who committed the charged offenses.  "It is well settled that identity is an element of every offense."  *Id*. at 614 (quotation marks and citation omitted).  Neither SG nor EG were able to testify confidently on the issue of which boy committed what touching.  However, EG stated that both respondent and Greer touched her buttocks.  Furthermore, the court adjudicated respondent and Greer responsible on the basis of an aiding and abetting theory.  MCL 767.39 provides: "Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense."  With that in mind, even if EG and SG were unable to identify specifically who touched who, the testimony leaves no doubt that, at the very least, respondent aided and abetted in the commission of the crime.

III.  DUE PROCESS

Respondent lastly contends that his right to due process was violated because he did not receive notice before the adjudicatory hearing that there was a possibility he could be adjudicated responsible under an aiding and abetting theory.  We disagree.

First, this issue is unpreserved.  A party preserves an issue by properly raising it in the trial court.  See *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994).  Respondent did not argue in the lower court that it was improper for the court to adjudicate respondent responsible under an aiding and abetting theory.  Unpreserved, constitutional errors are reviewed for "plain error that

-4-

affected substantial rights." *People v Pipes*, 475 Mich 267, 278; 715 NW2d 290 (2006) (quotation marks and citation omitted).

> Under the plain error rule, respondents must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected a substantial right of the respondent. Generally, the third factor requires a showing of prejudice—that the error affected the outcome of the trial proceedings. Respondents bear the burden of persuasion. The failure to establish a plain error that affected a substantial right precludes a reviewing court from acting on such an error. However, even if respondents show plain error that affected a substantial right, reversal is only warranted when the plain, forfeited error resulted in the conviction of an actually innocent respondent or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . . [*Id.* (quotation marks, citations, and footnotes omitted).

Respondent's argument on appeal is entirely premised on the idea that aiding and abetting constitutes a separate offense from the principal offense. This is an inaccurate recitation of the law. In Michigan, aiding and abetting is an alternate theory of criminal liability available to the prosecution. See *People v Perry*, 460 Mich 55, 63 n 20; 594 NW2d 477 (1999), citing MCL 767.39 ("[B]eing an aider and abettor is simply a theory of prosecution, not a separate substantive offense."). The pertinent statutes states: "Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." MCL 767.39. With that in mind, there is no merit to respondent's suggestion that aiding and abetting is a distinct criminal offense that implicates its own procedural notice requirements. Respondent has therefore failed to establish that his right to due process was violated, let alone that a plain error affecting substantial rights occurred.

Affirmed.

/s/ Jane M. Beckering
/s/ Karen M. Fort Hood
/s/ Douglas B. Shapiro